Pee. Oueiam.
 

 This was a notice of application to this court for attachment, for breach of an injunction issued by one of the judges of this court, upon a bill which stated that, on the 1st January, 1817, Rutherford leased certain premises of Miriam Lewis for five years, and was put into possession, and made improvements, and occupied it ever since as a brick-yard. He was to pay $500 in brick-work; $400 on or before 1st November, 1817, and $100 on or before the 1st November, 1818, which was secured by a separate 'covenant, she to reenter for non-performance by the space of 60 days. That he kept all his covenants except the brick-work, and that he was prepared with materials and workmen at his house to perform that covenant, and had time enough to have done so before
 
 *562
 
 the period of reentry could arrive; but she refused to permit him. She hath sued upon the covenant for the said $500 worth of brickwork, and the suit is now pending. She, John Lewis, Metcalf, and Hall threaten to take possession of the premises, and to oust him therefrom, and have actually taken possession of one of the houses, and are committing waste upon the property and materials in preparation to make bricks, they pretending the lease is forfeited. * The bill states improvements made by Rutherford to the value of $500, in preparation for making bricks the ensuing season, likely to be wasted by them, and that the injury he will sustain by being at this time of the year driven from his brick-yard will be irreparable; and, moreover, that the said Miriam, as admin-istratrix of her deceased husband, Joel Lewis, is indebted to him upwards of $2,000, independent of this transaction. The bill prays an injunction to desist from acts of ownership over the premises and from the commission of waste, and that they permit him to occupy his brick-yard and carry on his business, and, by order of this court, to be quieted in possession, and that Miriam be compelled to receive said $500 in brick-work, according to said covenant, and to cease the prosecution of her suit at law on said covenant. The injunction recited the statements in the bill, then commands the defendants to desist from exercising any acts of ownership over the land and premises aforesaid, and also from the commission of any waste whatsoever upon the same, &c.
 

 And upon a motion made pursuant to the notice, and some affidavits read on the part of the complainant, and an offer on the part of the defendants to read the answer of John Lewis, one of the defendants to the bill of complaint, not a defendant in this motion, much debate ensued, and after some time the court refused to hear that answer read. And Haywood, Judge, delivered his opinion as follows, to which RoaNE, Judge, assented : —
 

 If an injunction be issued upon a wrong statement of facts made by the complainant, the defendant should submit, and wait until he can answer the complainant’s bill and procure a dissolution of the injunction. Or, if the injunction be improperly or irregularly issued upon a true statement of facts, the defendant should object until he can move to discharge it for such irregularity or impropriety. 2 Ch. Cas. 203. If he disobey * it before he procure a dissolution or discharge, then he will be in contempt, and the court must punish it.
 

 
 *563
 
 As to the mode of proceeding for a breach: the service of the injunction appearing to the court by affidavit of service in the return of the injunction of the sheriff, and it being read to the court, and it being also proved that notice has been given to the adverse party that, on a certain day in the term, a motion will be made against them to show cause why an attachment should not issue, affidavits are then read to prove the breach, and these are followed by a motion to show cause why the attachment should not issue. The defendant shows cause by counter affidavits, but not by recurrence to the answer of the defendant filed to the complainant’s bill, for that can properly respond only to such matters as are stated in the'bill, and are antecedent to the breach alleged, and only proper to be adverted to on a motion to dissolve, as the matters in the bill itself are upon a motion to discharge for irregularity. If either party pray further time, the court in discretion may allow it, and may direct the clerk and master to issue subpoenas, and to bring them before him to make them affidavits for either party, all such persons as will not willingly attend ; and, on the day appointed, the court will proceed to examine, upon affidavits, the charge respecting the breach. If the court shall find that a breach has been committed, then an attachment will be ordered; on which the defendant shall be arrested, and give bail to the sheriff, and enter his appearance in court. The plaintiff thereupon files interrogatories in writing in the clerk’s office, which, if the defendant will not answer in writing and on oath, by a day to be assigned by the court, which answer is to be made before the clerk and master, then, upon motion, he shall be committed. If he submit to examination and confess the contempt, he must submit to the court, perform * what it requires, and pay costs. If, on examination, he denies the contempt, the plaintiff descends to proof before the court, and produces his witnesses, when the defendant may cross-examine, and the defendant may produce witnesses to show that he is not guilty. And upon a full hearing, if the court be of opinion that he is guilty, he must stand committed and pay the costs; and then he cannot be heard in the principal cause till he has yielded obedience to the injunction (Curius Cancellaria, 451), or give security for his obedience. Prac. Register in Chancery, 217; 2 Com. Dig. “ Chancery,” “ Injunction,” D, 8, If he has caused an execution to be taken out against an injunction, he shall make restitution of damages done by such execution. 1 Vern. 207.
 

 
 *564
 
 The present British practice is much shorter, for by it notice is given of the motion, to commit, an affidavit made of service of the notice, and motion is made accordingly. A day is given to the adverse party, if not ready, and then, upon hearing the affidavits on both sides, decides whether they are guilty or not of the breach, and if they be, commits them to prison, from whence they cannot be delivered till they pay the adverse party their costs, and sometimes until they have made restitution for the damages that may have been sustained by a breach of the injunction.
 

 The old rule in England, before the time when Chief Baron Gilbert wrote hi’s Forum Romanum, used to be for the plaintiff to produce an affidavit of the breach, and for the clerk in the court to issue an attachment of course, upon which the sheriff arrested the defendant and took bail, and the plaintiff filed interrogatories pursuing the affidavit; and if the defendant did not attend to be examined, to stand committed upon motion. If he confessed them,’to submit, &c., and pay costs. If, upon examination, he denied the charge, then the plaintiff was to prove it, and it was referred to the master to say whether the party was guilty or * not, before whom the defendant might appear and except to his report, and bring it on for the judgment of the court. Gil. For. Romanum, 198, 199. Our practice is more dilatory, but more congenial to the spirit of our Constitution, and agrees with the ancient practice, except in such particulars where it is changed by modern precedents set in our own courts.
 

 The court gave a further day, that the defendants might procure an affidavit of one of the defendants to the bill of complaint instead of the answer, which the court now refused to receive.
 

 And on that day, on the application of the defendant, who wished a full court, gave him another day in the term.
 

 On the day appointed, the parties appeared, and the counsel for Rutherford read the injunction and the petition complaining of a breach, and then read the affidavits taken on his part; after which the defendants’ counsel read the affidavits taken on their part. Then the counsel on the part of the prosecutor were heard, and afterwards the counsel on the part of the defendants.
 

 The breaches alleged were, that, after the injunction served upon them, Metcalf and Holt took possession of the brick-yard, and have hauled and piled thereupon a large quantity of wood, have
 
 *565
 
 erected bouses, and are exercising every act of ownership over said premises.
 

 Much argument has been used to show that one cannot be punished for contravening what is not prohibited (3 B. Abr. 656); that forcible entry was the proper remedy; that an injunction cannot be converted into a
 
 habeas corpus ;
 
 that waste in 4 Lord Coke’s Writings means destruction of lands, timber, and houses ; that an injunction is prohibitory, not imperative (3 B. Abr. 648), to quiet, not to take away possession (2 H. C. 186); and there is no breach, because, on the 29th January, Lewis put Metcalf and Holt in possession, and on * the 31st January the injunction was granted, and served on the 2d February. Hart, it is true, was tenant of Rutherford in 1817 and in January, 1818, till on the day Lewis gave possession. He was from home when Lewis gave it, and, returning, found Metcalf and Holt in the house which he occupied, which he took possession of again and continued there a month, till ordered away by Metcalf and Holt; and upon this statement it is argued that the whole possession was in the defendants on the day when the injunction issued.
 

 It is sufficient to say to all this, that if a man files his bill in equity to be quieted in possession upon equitable matter alleged, and shows upon the face of his bill that he is likely to be turned out of possession by force before his claim can be investigated in court, and that he yet hath possession either of all or of part of the premises, that an injunction may issue to quiet his possession till the hearing; which, however, may be dissolved upon sufficient matter disclosed in the defendant’s answer at the next or any subsequent term; otherwise the powerful would oppress and tyrannize over the weak, and oftentimes deprive them of the means of complaining to the court for redress. The injunction being granted, as in this case it is, upon security given to indemnify the defendants from all damages sustained by the injunction, secure them from any material injury. This being so, it is next to be understood what is a possession. Continuance in possession under a lease for five years, commencing in 1817, and through that year, and in January, 1818, up to the time of eviction, is a possession in Rutherford to the time of eviction; and if his tenant was not wholly dispossessed but retained possession of any one house, it is the same as' if Rutherford himself had retained it. Had he retained it, his legal possession of all the premises
 
 *566
 
 would have remained, and his actual 'possession also, except as to the house actually posssessed by his adversary. Suppose a total dispossession of Rutherford’s tenant on the * 29th January, 1818, and a reentry by the same tenant on the same day, and a repossession of one house on the premises; would not that be a recontinuance of Rutherford’s possession, and a legal possession of the whole in him from them to the time of an actual dispossession by the defendants ? To say so, is to underrate the legal intelligence of this court. The counsel, it is presumed, do not seriously think so. All their arguments upon any other point than that of the breach itself have been intended, no doubt, for the instruction of the court, and in that point of view might be valuable, as all of us forget after a great length of time much of what we have read in our earlier years. But they are not regular upon such a question ; the court have listened to them with all the attention they are entitled to. We have even consented to a short investigation of the fact of Hart’s continuing in possession for Rutherford from the 29th of January to the time of his expulsion a month afterwards. But I for one do not wish it to be understood that I deem it material whether in point of fact he was or was not then in possession under Rutherford: Rutherford has proven that he was ; upon that the injunction is founded. In this State injunctions are no otherwise issued than on an
 
 ex parte
 
 statement made on oath by him who obtains it; and shall it be said that in no case whatsoever, upon affidavit that a possession is likely to be taken by force, can a judge issue his injunction to prevent it ? Yet, most certainly, he cannot do so, if a statement on oath by the applicant is not a sufficient foundation for it. All that a court of equity can do to prevent wrong and injustice till the next term, this doctrine plucks from them ; and every man in the community must be exposed to the superior violence of his more powerful neighbor till the court arrives. To be sure it is the duty of a judge to hear patiently those and all other arguments which learned counsel may deem useful to be advanced for their client; but he would betray the * most important of his duties should he yield to them.
 

 There is, however, a former precedent in this State for considering an injunction relative to possession, and prohibiting entry on the same is not forbidding the party enjoined to keep possession of that which he actually has at the time of the injunction; that makes the
 
 *567
 
 injunction conditional, and dependent upon the testimony concerning the extent of the defendant’s possession at the time ; that is another reason for waiting for more circumstantial proof of Hart’s possession on and after the 29th of January. It is better to make even that inquiry than to do nothing at all upon the breach complained of.
 

 This motion finally came before the court and Hart’s additional affidavit was produced, stating that after the defendants took possession he was employed by them as a wagoner, and occupied the house he lived in for a month under them. Therefore Haywood, Judge, was for issuing the attachment for the plowing of the turnip patch, and the several other acts stated in the affidavits which were in the face of the injunction. RoaNE, Judge,
 
 contra,
 
 and so the motion did not succeed, and the defendants were discharged.
 

 When injunction granted,
 
 see
 
 Taylor
 
 v.
 
 Hunter,
 
 5 Hum. 569. As to
 
 disobedience of injunction, Farnsworth
 
 v.
 
 Fowler,
 
 1 Swan, 1;
 
 Boils
 
 v.
 
 Boils,
 
 1 Cold. 284;
 
 Stinson
 
 v.
 
 McMurray,
 
 6 Hum. 339. See King’s Digest, 2453-56.