500 F.2d 712
 Johnny M. GARDNER, Dean Anthony Ackley, and Willie Jones,
Jr., Individually, etc., Plaintiffs-Appellants,
v.
Judge C. LUCKEY, Jr., as Public Defender for the Thirteenth
Judicial Circuitof the State of Florida, et al.,
etc., Defendants-Appellees.
 No. 73-1777.
 United States Court of Appeals, Fifth Circuit.
 Sept. 16, 1974, Rehearing and Rehearing En Banc Denied Dec. 10, 1974.
 
 William Knight Zewadski, Tomothy A. Johnson, Jr., Tampa, Fla., for plaintiffs-appellants.
 Robert L. Shevin, Atty. Gen. of Florida, Baya Harrison, III, Asst. Atty. Gen., Tallahassee, Fla., for defendants-appellees.
 Before THORNBERRY, GODBOLD and CLARK, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 Johnny Gardner, Dean Ackley and Willie Jones, the appellants, were separately convicted of Florida crimes. Under 42 U.S.C. 1983 they mounted a sweeping class action seeking declaratory and injunctive relief against the Florida Public Defender Offices in the Twelfth and Thirteenth Judicial Circuits of Florida,[1] which had represented them at various stages of the criminal process. The thrust of their complaint was that the Public Defender Offices systematically failed to meet minimum constitutional standards in the representation afforded indigents at trial, on appeal, and in state post-conviction proceedings. More specifically, stated appellants, the Public Defenders failed to consuit with those whom they were appointed to represent, to advise each indigent defendant of his legal rights, to provide adequate investigation of the availability of factual and legal defenses, and to assign a specific attorney to defend the indigent.
 
 
 2
 Appellants sought neither release from custody nor damages, and did not cast doubt upon the zeal and professional skill of individual Public Defenders and their staffs. Instead they requested the District Court to declare that the Public Defenders' acts, policies, practices, pattern of conduct and custom violated their rights, and to enjoin the Offices from further representation of indigents unless standards, specified in the complaint and alleged to represent minimum standards of constitutional effectiveness, were met.[2] They made inadequate funding and excessive caseloads a key claim in their suit. They requested a declaration that appointment of Public Defenders for any representation in excess of the Offices' capacity violated their rights. Also, they asked the District Court to declare the Offices' caseloads excessive, to specify how excessive they were, and to enjoin acceptance of overload cases.
 
 
 3
 The District Court dismissed the complaint on four grounds: (1) a Public Defender is not a state actor when he carries out his central function of representing indigents;[3] (2) the class action was not maintainable because the deprivation of the right to effective assistance of counsel can only be proved by reference to particular instances; (3) there were adequate remedies at law such as state post-conviction proceedings and federal habeas corpus; (4) there was no case or controversy, because the relief requested was so broad that an advisory opinion would be required. We do not pass on the correctness of any of these holdings, but we affirm on other grounds.
 
 
 4
 This case bears a strong resemblance to O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). O'Shea was a class suit against two state judges. The named plaintiffs, 17 black and two white residents of Cairo, Illinois, allleged that the judges deprived them of their constitutional rights by setting bond in criminal cases without regard to the circumstances of individual defendants, by imposing harsher sentences upon them and the members of their class than upon white persons, and by burdening their right to jury trial. The Supreme Court held that none of the named plaintiffs had alleged enough to establish a case or controversy with the defendants. Thus federal court jurisdiction was lacking both as to the named plaintiffs and the class they purported to represent.
 
 
 5
 The Court pointed out that the complaint failed to identify any one of the named plaintiffs as having himself suffered injury. It explained that
 
 
 6
 past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, . . . if unaccompanied by any continuing, present adverse effects. Neither the complaint nor respondents' (plaintiffs') counsel suggested that any of the named plaintiffs at the time the complaint was filed was himself serving an allegedly illegal sentence or was on trial or awaiting trial before petitioners. Indeed, if any of the respondents were then serving an assertedly unlawful sentence, the complaint would inappropriately be seeking relief from or modification of current, existing custody. See Preiser v. Rodriguez, 411 U.S. 475, (93 S.Ct. 1827), 36 L.Ed.2d 439 (1973). Furthermore, if any were then on trial or awaiting trial in state proceedings, the complaint would be seeking injunctive relief that a federal court should not provide. Younger v. Harris, 401 U.S. 37 (91 S.Ct. 746), 27 L.Ed.2d 669 (1971) . . .. We thus do not strain to read inappropriate meaning into the conclusionary allegations of this complaint.
 
 
 7
 414 U.S. at 495, 94 S.Ct. at 676, 38 L.Ed.2d at 683.
 
 
 8
 The appellants in the present case are in the same posture as the O'Shea plaintiffs, having failed to show the existence of a case or controversy. Nowhere in the complaint did any named plaintiff allege that he himself was injured by the conduct of the Public Defenders. Indeed, if a plaintiff had made such an allegation, we would be required to regard him as challenging the legality of his conviction, and under Preiser v. Rodriguez he would be relegated to habeas corpus as his exclusive federal remedy. See411 U.S. 475, 489-490, 93 S.Ct. 1827, 36 L.Ed.2d 439, 450 (1973).[4] Moreover, to the extent the complaint alleged present and continuing constitutional deprivations due to the representation appellants were receiving in pending state appeals proceedings, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), barred the suit.
 
 
 9
 There remains the question whether the complaint alleges a sufficiently lively threat of future injury to make out an Article III case or controversy. The prospect of future injury rests upon the likelihood that the plaintiffs named in the complaint will pursue further state court proceedings of a type that are within the statutory scope of duty of the Public Defender. See Fla.Stat.Ann. 27.50 et seq. We regard this as too speculative. We are reinforced in our view by the alternative holding in the O'Shea case, which focused upon lack of a sound basis for equitable relief. The Supreme Court wrote:
 
 
 10
 What (plaintiff-respondents) seek is an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials. The order the Court of Appeals thought should be available if respondents proved their allegations would be operative only where permissible state prosecutions are pending against one or more of the beneficiaries of the injunction. Apparently the order would contemplate interruption of state proceedings to adjudicate assertions of noncompliance by petitioners. This seems to us nothing less than an ongoing federal audit of state criminal proceedings which would indirectly accomplish the kind of inference that Younger v. Harris and related cases sought to prevent.
 
 
 11
 414 U.S. at 500, 94 S.Ct. at 678, 38 L.Ed.2d at 686. It is clear from the face of their complaint that our appellants contemplate exactly the sort of intrusive and unworkable supervision of state judicial processes condemned in O'Shea. We hold that the District Court properly dismissed their suit. Cf. also Ad Hoc Committee on Judicial Administration v. Massachusetts, 488 F.2d 1241 (CA1, 1973) (noting the unwisdom of making the federal courts the receiver of the state courts); Inmates of Attica Correctional Facility v. Rockefeller, 477 F.2d 375 (CA2, 1973) (noting undesirability of placing state prosecutorial decisions under federal court supervision.)
 
 
 12
 In sum, we hold that appellants cannot get into federal court to make their sweeping challenge to the operation of the Florida Public Defender Offices. We emphasize, however, that they are not left without a remedy for constitutional wrongs, if any, done them by the Offices. They can challenge the legality of their custody via federal habeas corpus, subject, of course, to prior exhaustion of state remedies.[5]
 
 
 13
 The judgment of the District Court dismissing appellants' suit is affirmed.
 
 
 
 [1]
 Appellees, Walter Talley and C. Luckey were the heads of those offices. Public Defenders in Florida are salaried state officials, elected for four-year terms. See Fla.Stat.Ann. 27.50 et seq. They are empowered to hire salaried Assistant Public Defenders and other helpers to the extent of the funds the state makes available
 
 
 [2]
 For example, appellants requested taht an attorney from the Office be required to consult with the accused indigent within 48 hours of arrest, to advise him of all his rights, to explore all possible defenses, to refrain from withdrawing except upon permission of the court and after first advising the indigent of the right to appeal, etc
 
 
 [3]
 The no state action theory stems from the idea that a public defender, although paid by the state, actually opposes the state in a particular case and owes allegiance solely to his client. See Wallace v. Kern, 481 F.2d 621 (CA2, 1973), cert. denied, 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974), rev'g United States ex rel. McLaughlin v. People of State of New York, 356 F.Supp. 988 (E.D.N.Y.1973). But see John v. Hurt, 489 F.2d 786 (CA7, 1973) (it is at least arguable that the public defender acts under color of law, but he enjoys qualified immunity against damage suits)
 Appellees argue that this circuit has endorsed the no state action theory in Sullens v. Carroll, 446 F.2d 1392 (CA5, 1971), and O'Brien v. Colbath, 465 F.2d 358 (CA5, 1972). Appellants urge that those cases do not govern, as Sullens involved damages only and turned on the doctrine of immunity of federal officials, and O'Brien, also a damage suit, was in the nature of a malpractice action, which is traditionally regarded as a state law claim and is not congnizable under 42 U.S.C. 1983. We do not decide the state action issue, and intimate no view on its correct disposition.
 
 
 [4]
 In Wolff v. McDonnell, U.S. , 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court elaborated an exception to Rodriquez. It held that a state prisoner's damage suit against prison authorities for rescission of good-time credit without constitutionally adequate procedural safeguards was maintainable under 42 U.S.C. 1983, even if the suit would incidentally call upon the court to declare the procedures defective. Assuming that the theory of the Wolff exception otherwise might sweep beyond the context of good-time rescission by prison authorities, appellants do not benefit from it, because a 1983 claim for damages which is necessary to trigger the exception, is not made and is unavailable against state public defenders. O'Brien v. Colbath, 465 F.2d 358 (CA5, 1972)
 
 
 [5]
 See also the suggestion in O'Shea of possible relief under 18 U.S.C. 242. 414 U.S. at 488, 94 S.Ct. at 669, 38 L.Ed.2d at 687-688