**Jerry PARKER, Jr. et al.,
Plaintiffs-Appellants,**

v.

**Kenneth TURNER et al.,
Defendants-Appellees.**

No. 78–1063.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 11, 1980.

Decided July 3, 1980.
Rehearing and Rehearing En Banc
Denied Sept. 19, 1980.

Albert R. Thompson, Memphis Area Legal Services, Inc., Edward J. McKenney, Jr., Hanover, Walsh, Jalenak & Blair, Thomas M. Daniel, Memphis, Tenn., for plaintiffs-appellants.

D. Jack Smith, Memphis, Tenn., for defendants-appellees.

Before KEITH, MERRITT and MARTIN, Circuit Judges.

KEITH, Circuit Judge.

This case presents interesting questions concerning the abstention doctrine first outlined by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 664 (1971). The district judge felt that *Younger* principles applied here and dismissed the complaint. We agree and affirm.

1. Although non-support is a misdemeanor in Tennessee, T.C.A. §§ 39–202–06, this case concerns civil contempt proceedings used to enforce child support and alimony orders.

2. The right to appointed counsel in civil contempt proceedings is unsettled. Courts have uniformly recognized the right to appointed counsel in situations where a person faces imprisonment for refusing to testify before a grand jury or refusing to comply with an Internal Revenue summons. *United States v. Anderson*, 553 F.2d 1154 (8th Cir. 1977); *In re Di Bella*, 518 F.2d 955, 959 (2d Cir. 1975); *In re Kilgo*, 484 F.2d 1215 (4th Cir. 1973); *United States v. Sun Kung Kang*, 468 F.2d 1368 (9th Cir. 1972); *People v. Johnson*, 407 Mich. 134, 283 N.W.2d 632 (1979); *People v. Lucero*, Colo., 584 P.2d 1208 (1978); *State v. Roll*, 267 Md. 714, 298 A.2d 867 (1973). *See also City of Klamath Falls v. Bailey*, 43 Or.App. 331, 602

## FACTS

The named plaintiffs filed this action on October 28, 1977. They sought to represent a class of indigent fathers who were under state court orders to pay alimony and child support. The plaintiffs claimed that the state juvenile court judges in Memphis and Shelby County, Tennessee routinely denied basic due process rights in civil contempt proceedings to indigent fathers who were behind in their support payments.[1] Specifically, the plaintiffs alleged that the juvenile court judges, as a matter of policy, denied fathers their right to counsel, denied them the right to confront and cross-examine witnesses, and denied them the right to testify and present witnesses in their behalf. According to the plaintiffs, the juvenile court judges in the Memphis area routinely jail fathers who owe support money without giving the fathers even the opportunity to present a defense. This means, claim the fathers, that many of them have been and will continue to be jailed even though they are destitute and cannot afford to make the support payments.

The plaintiffs sought declaratory and injunctive relief to ensure that the juvenile court followed basic due process. The plaintiffs also sought a declaration that every father cited for contempt had a right to an appointed attorney if he could not afford one.[2]

P.2d 1107, 1109–11 (1979) (Thornton, J., concurring).

However, courts are divided on the issue of whether an indigent spouse has a right to appointed counsel in civil contempt proceedings for failure to pay child support or alimony. *Henkel v. Bradshaw*, 483 F.2d 1386 (9th Cir. 1973) (dicta) (right to counsel); *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980) (no right to counsel); *Brotzman v. Brotzman*, 91 Wis.2d 335, 283 N.W.2d 600 (Wis.App.1979) (right to counsel); *Ex Parte Wilson*, 559 S.W.2d 698 (Tex.Civ.App.1977) (dicta) (right to counsel); *Sword v. Sword*, 399 Mich. 367, 249 N.W.2d 88 (1976) (no right to counsel); *In re Calhoun*, 47 Ohio St.2d 15, 350 N.E.2d 665 (1976) (no right to counsel); *Tetro v. Tetro*, 86 Wash.2d 252, 544 P.2d 17 (1975) (right to counsel); *Otton v. Zaborac*, 525 P.2d 537 (Alas.1974) (right to counsel); *Duval v. Duval*, 114 N.H. 422, 322 A.2d 1 (1974) (no right to counsel, but right

The district court dismissed the complaint. The court stated that it was "not unsympathetic to plaintiffs' claims." However, the court thought that for it to adjudicate the suit would result in a "significant and unacceptable interference with the state judicial process," which might include ongoing supervision of the state juvenile court. The court relied on the abstention doctrine of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 664 (1971), and its progeny. The question on appeal is whether the *Younger* doctrine properly applies here.

### I.

*Younger v. Harris* advanced the proposition that absent extraordinary circumstances, a federal court cannot enjoin a pending criminal trial in a state court.[3] This doctrine is based on considerations of judicial economy and proper state-federal relations.[4] Thus, in the typical *Younger* situation, a defendant who is being prosecuted in state court under a constitutionally suspect statute cannot go running into federal court seeking an adjudication of his rights and/or an injunction halting the pending criminal prosecution.[5] The defendant must first seek relief within the state system.

The Supreme Court has not yet extended *Younger* to all situations where a civil proceeding is pending in state court. However, the Court has applied *Younger* in various civil contexts. Thus, in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Court refused to interfere with a civil nuisance action in state court in which the state sought to close down a movie theatre. Significantly, the state proceeding, although civil, was quasi-criminal in nature and the state was a party to it. In addition, the theatre owners had not appealed the adverse state court result, but had filed a new federal action, effectively trying to collaterally attack the state court judgment.

Although factually unique, *Huffman* did extend *Younger* restraint principles to civil cases in which important state concerns were present. Thus, in *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Court applied *Younger* to prevent interference with pending child abuse proceedings where children had been temporarily taken from their parents. The state was a party to the child abuse proceedings and had an obviously important interest in them. The Court also found

could arise in a complex case); *Commonwealth ex rel. Brown v. Hendrik*, 220 Pa.Super. 225, 283 A.2d 722 (1971) (right to counsel). *See Chase v. Chase*, 287 Md. 472, 413 A.2d 208 (1980) (dismissing issue as moot). *See also Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (case by case right to counsel in probation revocation hearing); *Davis v. Page*, 618 F.2d 374 (5th Cir. 1980) (citing cases) (absolute right to counsel in child dependency proceedings); *Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974) (case by case right to counsel in child dependency proceedings); *Sims v. State Dept. of Publ. Welfare*, 438 F.Supp. 1179, 1194 (S.D.Tex.1977), *rev'd on other grounds sub nom. Moore v. Sims*, 442 U.S. 415 (1979) (child has right to counsel in state parental rights termination proceedings); *Smith v. Edmiston*, 431 F.Supp. 941 (W.D. Tenn.1977) (right to counsel in dependency and neglect proceedings); *Vail v. Quinlan*, 406 F.Supp. 951, 960 (S.D.N.Y.1976), *rev'd on other grounds sub nom. Juidice v. Vail*, 430 U.S. 327 (1977) (right to counsel in civil contempt proceedings); *State of Louisiana v. Walker*, La., 386 So.2d 908 (1980) (dismissing, over dissent

claim of right to counsel in civil, contempt proceeding).

3. Examples of "extraordinary circumstances" are bad faith and harassing prosecutions. *Younger v. Harris*, 401 U.S. 37, 54, 91 S.Ct. 746, 755, 27 L.Ed.2d 664 (1971); egregious, "patently unconstitutional" state statutes. *Id.* at 53–54; a biased state forum, *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). *See generally* Note, Developments Section 1983, 90 Harv.L.Rev. 1133, 1322–27 (1977).

4. *See* Judge Merritt's excellent discussion of *Younger* in *Flynt v. Leis*, 574 F.2d 874, 879–82 (6th Cir. 1978), *rev'd on other grounds*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979).

5. This was what happened in *Younger* and its companion cases, *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971) and *Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). In *Samuels v. Mackell*, *supra*, the Court held that *Younger's* federalism principles barred a federal court from issuing declaratory relief when there was a state criminal proceeding pending.

**4**

important state concerns in *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 436 (1977), where the state was seeking to use its prejudgment attachment procedures to collect money allegedly owed it. There, the important state interest was the state's safeguarding the fiscal integrity of its social services programs by moving quickly to collect monies owed.[6]

From these cases, it appears that whether the state is a party to pending or completed civil proceedings is a key factor in determining whether to apply *Younger's* policy of restraint. However, important state interests may be present even if the state is not a party to the state court proceedings. In *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court applied *Younger* in the context of state contempt proceedings brought by one civil litigant against another. The important state interest was preserving the integrity of its pending contempt orders which acted to vindicate the authority of its state judges.

We followed these principles in *Kenner v. Morris*, 600 F.2d 22 (6th Cir. 1979). There, a husband was involved in bitter divorce/alimony proceedings. He filed suit in federal court, claiming that Tennessee statutes which allowed women but not men to receive alimony were unconstitutional. This court applied *Younger* reasoning and affirmed the order of dismissal below. Although the state was not a party to the domestic relations proceeding, such proceedings are traditionally of deep state concern.

We saw no need to interfere with the pending proceedings.[7]

In this case, the plaintiffs seek relief affecting state civil contempt proceedings in domestic relations support cases. It is true that no underlying criminal proceedings are present. However, the state's interest in preserving the integrity of its contempt proceedings, *Juidice, supra*, as well as its domestic relations cases, *Kenner, supra*, requires us to analyze this case under *Younger*.

## II.

The plaintiffs argue that *Younger* does not apply because they are not seeking any federal relief which might impinge on a pending state proceeding. In their complaint, the plaintiffs state that they have been subjected to summary incarceration in the past; however, they do not seek to relitigate anything that happened in the past. Rather, they seek prospective relief to insure that they are accorded due process in future contempt proceedings should they be again charged with failure to make court-ordered support payments.[8] Also, there are no contempt proceedings pending against any of the named plaintiffs.[9] Thus, what the plaintiffs seek is a declaratory judgment that certain allegedly widespread practices in the juvenile court are unconstitutional.

We must agree with the plaintiffs' contentions, so far as they go. *Younger* restraint applies when there is a pending

---

6. In *Trainor*, the state claimed that a man and wife had fraudulently collected public assistance. Instead of filing criminal charges, however, the state filed a civil suit to recoup the allegedly wrongfully obtained benefits. Although the state was proceeding civilly, like any other party, the Court thought that the underlying cause of action was of significant interest to it.

7. Other cases have applied *Younger* principles when dealing with domestic relations matters. *Williams v. Williams*, 532 F.2d 120 (8th Cir. 1976); *Littleton v. Fisher*, 530 F.2d 691, 693 (6th Cir. 1976). *See also, United States v. State of Ohio*, 614 F.2d 101 (6th Cir. 1979) (reversing injunction against state administrative tax proceedings); *Lamb Enterprises v. Ki-*

*roff*, 549 F.2d 1052 (6th Cir.) *cert. denied*, 431 U.S. 968 (1977) (applying *Younger* principles to prevent a federal court from enjoining a pending state civil proceeding in which res judicata was raised as a defense because of a previous federal judgment); *Louisville Area Inter-Faith Community v. Nottingham Liq.*, 542 F.2d 652 (6th Cir. 1976) (applying *Younger* principles to prevent a party from using a federal court to attack an ex parte state court injunction.)

8. Future contempt proceedings are likely, plaintiffs say, because they are indigent and cannot afford to make any support payments.

9. At least this was true as of the date of oral argument.

criminal or, as discussed *supra*, a pending civil proceeding. So long as an applicable proceeding is pending in state court, the federal court is barred from enjoining it or from granting declaratory relief.[10] However, *Younger* restraint is generally not applicable where there is no pending state proceeding. This is clear from *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), which allows a federal court to grant declaratory relief regarding a state statute or procedure. If there is no pending state court proceeding, a federal court is ordinarily free to adjudicate constitutional questions.[11]

*Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), illustrates this principle. In that case, plaintiff Maynard was prosecuted in state court on three separate occasions for covering up a segment of his license plates which he thought was offensive to his religious beliefs. He was convicted each time, accepted the punishment meted out and did not appeal. The plaintiff then filed suit in federal court, claiming that the state could not constitutionally prevent him from covering up the offending slogan on his license plates. The plaintiff did not ask the federal court to set aside his three convictions in state court. He simply sought relief against any further prosecutions in the future. Since there were no pending state proceedings, *Younger* restraint principles were inapplicable. The Supreme Court affirmed the entry of federal injunctive relief.[12]

This case is similar to *Wooley*. As in *Wooley*, the plaintiffs have been subjected to past state court actions which are fully terminated. As in *Wooley*, the plaintiffs here do not seek to relitigate what occurred

---

10. As indicated in n. 5, *supra*, in *Samuels v. Mackell*, the Court barred federal declaratory relief where there was a pending state criminal proceeding. Although declaratory relief is less intrusive than an injunction, the Court thought that a federal declaratory judgment would interfere greatly with the pending state proceeding. Thus, under *Younger* and *Samuels*, a federal court may not issue either a declaratory judgment or an injunction where there are pending state court proceedings.

11. A significant problem is presented by the requirement that there be an actual case or controversy for the federal court to consider. Ordinarily, if criminal prosecution is threatened there exists the requisite controversy, e. g., *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (general likelihood of prosecution); *Steffel v. Thompson*, 415 U.S. 452, 455–56, 94 S.Ct. 1209, 1213–14, 39 L.Ed.2d 505 (1974) (plaintiff was threatened with prosecution and had a companion who had been prosecuted). However, if the possibility of prosecution is abstract or distant, then no controversy exists, e. g., *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1973) (general allegations of future injury too speculative); *Boyle v. Landry*, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971) (same).

In *O'Shea v. Littleton, supra* at 493–99, 94 S.Ct. at 674–77, the Court found no justiciable case or controversy where plaintiffs had alleged that state judges and magistrates discriminated in bail and sentencing practices. The Court noted that plaintiffs' complaint was conclusory and contained no specific allegations of past deprivation of rights. More important, the Court thought it speculative for the plaintiffs to claim that they would be faced with discriminatory bail and sentencing practices *if* they were charged with violating the law.

Although the issue is not raised on appeal, the existence of an actual case or controversy in this case is open to question. Unlike *O'Shea*, the complaint in this case does allege numerous instances of wrongful conduct by the Memphis Juvenile Court Judges. Like *O'Shea*, however, the complaint assumes that the plaintiffs will be charged and hauled into court in the future where they will be subject to the allegedly unconstitutional practices charged.

In *O'Shea*, the plaintiffs claimed that they were likely to be prosecuted because they were engaged in a controversial protest and boycott movement. The Supreme Court said that this was not enough since it presupposed that the plaintiffs would violate the law. In this case, however, the plaintiffs claim that they cannot afford to make support payments and thus are likely to face future contempt proceedings. We agree that the plaintiffs' specific allegations of poverty and past jailing for non-support are sufficient to create an actual case or controversy.

12. Ordinarily, a court would enter declaratory relief. The Court concluded, however, that in light of past prosecutions, formal injunctive relief was appropriate *Wooley v. Maynard*, 430 U.S. 705, 711–12, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977). *See also Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (affirming district court's injunction against state statute prohibiting persons who owed child support from marrying without permission. No state proceeding was pending.)

in the past, but only wish relief against future deprivation of constitutional rights. As in *Wooley*, there is no pending state court proceeding.

Unfortunately for the plaintiffs, there is one significant difference between this case and *Wooley*. *Wooley* presented a case where the plaintiff alleged that a state statute was unconstitutional as applied to him. The plaintiffs in this case do not challenge any state statute. Rather, they allege a pattern of unconstitutional practices in civil contempt proceedings in the state Juvenile Court in Memphis. The question is whether we should extend *Younger* and its principles of comity and federalism to bar relief solely because of possible undue interference with the *conduct* of state proceedings.

### III.

There exists much tension between *Younger's* endorsement of "longstanding public policy against federal court interference with state court proceedings," and the notion that federal courts exist to fearlessly protect constitutional rights. In the classic *Younger* scenario, this tension is resolved by deferring to pending state proceedings. After all, the federal court will probably see the constitutional issue later on in a habeas corpus proceeding, or, as in *Wooley*, in a prospective declaratory relief action. Thus, for practical purposes, *Younger* postpones, but does not eliminate, federal review of constitutional questions.

Since there is no pending state proceeding, this case does not present a classic *Younger* scenario. Instead, this case presents an analogous problem of federal interference with state court practices. In two cases, the Supreme Court has extended *Younger* principles to bar intrusive federal relief over state procedures. For reasons outlined below, we find these cases controlling here.

### A.

The first case we examine is *Rizzo v. Goode*, 423 U.S. 363, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The plaintiffs in *Rizzo* brought a § 1983 suit against named officials of the city of Philadelphia and Philadelphia Police Department, claiming that the officials had encouraged police misconduct and had failed to take even basic steps to stop it. The district court found no policy on the defendants' part to violate citizens' constitutional rights, but did find that the police department discouraged complaints and otherwise condoned police misconduct. The district court also found that police misconduct, while limited to a few officers, was unacceptably frequent. Based on these findings, the district court ordered that the department revise its police manuals and citizen complaint handling procedures.

The Supreme Court concluded that the district court had gone too far. The Court cited several reasons for this conclusion. First, the named defendants had nothing to do with the actual police misconduct on the street. At best, the city officials who were sued had failed to act when confronted with citizens' claims of police misconduct. *Rizzo, supra*, at 371–73, 96 S.Ct. at 604–05. Second, the actual instances of misconduct were, the Court thought, too few and far between. *Rizzo, supra* at 377–80, 96 S.Ct. at 607–08.

The Court's brief discussion of federalism in *Rizzo* did not suggest that a federal court lacked the authority to order a local police department or similar agency to reform its procedures.[13] *Rizzo* is a narrow opinion which concluded that on the unique facts before it, there was insufficient basis for the federal district court to have issued the relief it did. *Rizzo* counsels restraint when

13. In *Allee v. Medrano*, 416 U.S. 802, 94 S.Ct. 291, 40 L.Ed.2d 566 (1974), for example, the Court affirmed the entry of injunctive relief against police misconduct arising in a strike situation. Nothing in *Allee* or *Rizzo* suggests that there is any substantive limit to the nature of federal injunctive relief which a court can impose on public officials. *See e. g. Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) *aff'ng* 540 F.2d 229 (6th Cir. 1976) (federal court has broad authority to order remedial relief to overcome the effects of past unconstitutional school segregation).

considering supervisory injunctive relief against state agencies, but does not bar such relief where appropriate.

When the state agency in question is a state court, however, the equitable restraint considerations appear to be nearly absolute. At least that is the way we interpret *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 30 L.Ed.2d 674 (1973), *rev'ng Littleton v. Berbling*, 468 F.2d 389 (7th Cir. 1972), a case which we find legally indistinguishable from the instant case.

In *O'Shea*, a class of plaintiffs sued the local state prosecutors and judges, claiming selective enforcement and administration of the criminal law. Specifically, the plaintiffs alleged that the defendant county magistrate and judge were regularly violating their rights in three respects: 1) setting bond in criminal cases based on an arbitrary schedule without regard to individual fact situations; 2) discriminatorily sentencing them to longer and harsher sentences; 3) unlawfully requiring plaintiffs to pay for jury trials in local criminal proceedings. The plaintiffs claimed that the reason for the discriminatory administration of justice was that they were (mostly) black and had been conducting peaceful protest and economic boycott activities in the area.

The Supreme Court found that the complaint failed to state a cause of action. First, the Court did not think that the plaintiffs' allegations presented a sufficiently concrete dispute and showing of injury to make up an actual case or controversy.[14] *O'Shea, supra* at 490–99, 94 S.Ct. 673–77. Second, the Court concluded that a federal court could not grant equitable relief in any event.

The Court's rationale for this latter holding was squarely based on *Younger* federalism principles.[15] Although recognizing that no injunction against pending state proceedings was sought, the Court thought that the potential interference with the state courts was unacceptable. In *O'Shea*, the Court noted that the plaintiffs were seeking "an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials." *Id.* at 500, 94 S.Ct. at 678.

The Court rejected the possibility of such federal relief as "intrusive and unworkable." *Id.* The Court noted that a federal order would require ongoing federal supervision of how the state judges acted in numerous criminal cases. There even existed the possibility of contempt proceedings against the state judges. The Court equated this intrusion with the injunction against pending state proceedings which *Younger* prohibits. The Court pointed out that other, less intrusive avenues of relief were available: appeal within the state system, federal habeas corpus relief, federal criminal prosecution of state judges.[16]

The Court's ruling in *O'Shea* is significant because the Court was dealing with a complaint which had been dismissed under F.R.Civ.Pro. 12(b)(6).[17] The Court concluded that under no circumstances could the federal court provide the relief asked. This ruling, of course, is far different from that in *Rizzo*, where the Court merely concluded that no injunctive relief was warranted on the record before it.

---

14. See n. 11, *supra*.

15. In their brief, plaintiffs refer to this part of the Court's opinion in *O'Shea* as *dicta*. They are incorrect. The Court's determination that no equitable relief could issue was an alternative holding. True, Mr. Justice Blackmun thought that the Court was issuing an unnecessary advisory opinion on this issue. 414 U.S. at 504–05, 94 S.Ct. at 680–81 (Blackmun, J. concurring in part). A majority of the Court apparently did not agree with him, however.

16. The Court pointed out that although immune from civil suit, state judges can be criminally prosecuted under 18 U.S.C. § 242 for willfully depriving a citizen of his constitutional rights. *O'Shea, supra*, 414 U.S. at 503, 94 S.Ct. at 679.

17. It is, of course, hornbook law that a complaint cannot be dismissed under this provision unless a plaintiff could advance no set of facts which would entitle him to relief. *Conley v. Gibson*, 335 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Cases such as *Rizzo* reiterate the classic rule that federal courts should interfere with state proceedings of any kind only when called for. *Younger* established a near-absolute restraint rule when there are pending state criminal proceedings. *O'Shea*, in effect, extends this near-absolute restraint rule to situations where the relief sought would interfere with the day-to-day conduct of state trials.

### B.

We find *O'Shea* controlling. The relief which the plaintiffs seek in this case would necessarily require monitoring of the manner in which the state juvenile judges conducted contempt hearings in non-support cases. In *O'Shea*, the plaintiffs attacked bail and sentencing practices and the practices of requiring state court defendants to pay for jury trials. Here, the plaintiffs attack the state judges' alleged failure to let defendants conduct a defense or have the assistance of appointed counsel. We see no legal distinction between these claims for purposes of this case. The federal interference with the state proceedings would be as serious here as it was feared to be in *O'Shea*.[18]

Plaintiffs claim that all they are asking for in this lawsuit is a fair hearing when they are hauled into court on contempt charges for non-support. They analogize the relief they seek to that sought in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Gerstein*, the Court ruled that persons who were in jail awaiting trial had the constitutional right to a hearing to determine whether there existed probable cause that they had committed a crime. The Court found no *Younger* bar to federal relief. The reason was that the federal relief sought in *Gerstein* only relat-

ed to the "legality of pretrial detention without a judicial hearing, an issue that could not be raised in defense of the criminal prosecution." *Id.* at 109 n. 9, 95 S.Ct. at 860 n. 9. In *Gerstein*, 1) the plaintiffs sought a pretrial probable cause hearing, and 2) the claim could not be raised in the state criminal proceedings.

We do not believe that *Gerstein* controls here. First, *Gerstein* dealt with an issue which was collateral to a pending criminal proceeding. Second, the question raised in *Gerstein* was whether the plaintiffs had a right to have a hearing. The very existence of a hearing right was at issue. Third, the hearing right issue could not be raised in any pending state proceeding.

In this case, the question is not whether the plaintiffs have a right to a hearing in civil contempt cases. No one disputes that they have that right. Rather, the plaintiffs claim that the Juvenile Court judges, *in practice*, do not accord indigent fathers minimum due process in contempt proceedings. In other words, plaintiffs are objecting to the manner in which the contempt hearings are conducted. Finally, such claims can clearly be raised in the contempt hearings themselves and dealt with by Tennessee's appellate courts, if necessary.

We recognize that there are fine distinctions in this area. The critical questions are whether the issue raised is collateral to the principal state proceeding and whether state court relief is available.[19] For example, where hearing rights are clearly set out in a statute or court rule, a federal court can pass upon their constitutional adequacy. *Fernandez v. Trias Monge*, 586 F.2d 848 (1st Cir. 1978) ("claim addresses the statutory procedure, not its daily administration; relief, fashioned after

---

**18.** It is true that unlike *O'Shea*, the state proceedings in question here are civil and not criminal. For reasons outlined in part I, *supra*, we do not find this distinction to be significant.

**19.** Determining whether this criteria is met is not easy. In *State of N.J. v. Chesimard*, 555 F.2d 63 (3d Cir. 1977) (en banc), the issue was whether a federal court could order a state judge not to hold Friday court sessions because

that would infringe on a criminal defendant's religious beliefs. The majority said no, at least not until the state Supreme Court had been given an opportunity to pass on the issue. The dissenters would have granted declaratory relief, reasoning that the issue raised was collateral to the pending state criminal prosecution and that federal relief would not unduly interfere with it.

*Gerstein v. Pugh*, would outline only the minimum due process standard, leaving the choice of procedures and the operational details to the [state].". Similarly, following *Gerstein*, a federal court can declare that a person has the right to the existence of a hearing where that right has been denied by the state. *Flynt v. Leis*, 574 F.2d 874 (6th Cir. 1978), *rev'd on other grounds*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979).[20]

However, we cannot regard the contempt proceedings in issue here as collateral to another pending proceeding, as was the case in *Gerstein, supra*, and *Flynt, supra*. It is true that contempt proceedings are in a general sense "collateral" to a court's child support or alimony decree. However, such proceedings are the state mechanism used to enforce such decrees just as criminal proceedings are the state mechanism used to enforce the criminal law. *See Trainor v. Hernandez, supra* at 446 n. 9, 97 S.Ct. at 1919 (state attachment procedure under attack was integral to underlying state civil proceeding against defendants for fraud.)

Moreover, there is no clear statute or court rule governing civil contempt proceedings in Tennessee.[21] The law governing civil contempt is judge-made and includes a requirement that due process be met. The plaintiff alleged that this due process requirement is not being followed by certain state judges in Memphis. While we must accept these allegations as true for present purposes, there is no reason to believe that Tennessee's appellate courts would tolerate summary and indiscriminate jailing of indigent fathers. On the contrary, Tennessee's appellate courts have long required that a fair hearing be conducted in contempt cases, *e. g. Leonard v. Leonard*, 207 Tenn. 609, 341 S.W.2d 740 (1960); *Bowdon v. Bowdon*, 198 Tenn. 143, 278 S.W.2d 670 (1955); *Rutherford v. Metcalf*, 6 Tenn. 58 (1918); *Mayer v. Mayer*, 532 S.W.2d 54 (Tenn.App.1975). Thus, this case involves the alleged failure of some state judges to properly follow the law.[22]

**20.** In *Flynt*, there was no provision under Ohio law for a hearing or any formal adjudication when a state trial judge denied *pro hac vice* admission to out-of-state lawyers. Out-of-state attorneys who were denied *pro hac vice* privileges brought a federal suit, but only after they had unsuccessfully sought relief in state court. This court affirmed an injunction halting a pending state criminal trial until the two lawyers were told why they had been denied *pro hac vice* admission. This court thought that the attorneys had enough of a property interest in being employed to warrant immediate relief. The Supreme Court disagreed and reversed, concluding that the attorneys' employment interests did not deserve constitutional protection. We note that this court and the Supreme Court reserved the issue of whether failure to allow *pro hac vice* admission without any type of a hearing might violate the client's Sixth Amendment Right to Counsel. Consideration of that issue was barred by *Younger v. Harris* since it could be raised in the pending criminal prosecution.

**21.** T.C.A. § 37–257 gives Tennessee's Juvenile Courts the same power to imprison for contempt which is possessed by other Tennessee Courts. In addition, T.C.A. § 36–231 specifically allows imprisonment for contempt in bastardy or paternity cases; *see also* T.C.A. §§ 23–901–905. However, we have not been cited to any statute or court rule which outlines the procedure to be followed in civil contempt cases. *See generally* Ellis, *The Contempt Powers of Tennessee Courts*, 37 Tenn.L.Rev. 538 (1970).

**22.** Our conclusion that federal relief cannot be granted at this time is in accord with other courts which have considered similar questions. *See Henkel v. Bradshaw*, 483 F.2d 1386 (9th Cir. 1973) (federal court could not grant injunctive or declaratory relief to father who alleged the right to appointed counsel in pending state court contempt for non-support proceedings). *See also Munson v. Gilliam*, 543 F.2d 48, 54–55 (8th Cir. 1976) (injunction against state prosecutor's bringing of charges in certain types of cases overturned on *Younger* grounds); *Bonner v. Circuit Court of City of St. Louis*, 526 F.2d 1331, 1335–37 (8th Cir. 1975) (en banc), *cert. denied*, 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 (1976) (dismissing on *Younger* grounds, an action alleging that certain state judges engaged in a racially-based conspiracy to coerce black defendants to plead guilty); *Wallace v. Kern*, 520 F.2d 400 (2d Cir. 1975), *cert. denied*, 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976) (reversing a district court judgment ordering substantial changes in state bail procedures; interference with the state procedures was unacceptable, especially since adequate state remedies existed); *Gardner v. Luckey*, 500 F.2d 712, 715 (5th Cir. 1974), *cert. denied*, 423 U.S. 841, 96 S.Ct. 73, 46 L.Ed.2d 61 (1975) (dismissing on *Younger* grounds, an ac-

Plaintiffs, however, argue that there exist "extraordinary circumstances" here which justify federal injunctive relief. The main argument plaintiffs make is that they have no adequate means of redress in the state courts. Were this true, the plaintiffs would succeed in this appeal. However, we have great difficulty accepting the argument that a person jailed for civil contempt for non-support in the state of Tennessee has no right of appeal. Even a cursory review of Tennessee law reveals that there exist ample state remedies.[23]

We note, however, that federal relief is not foreclosed forever. Should the Tennessee appellate courts be unable or unwilling to correct continuing unconstitutional conduct by the Juvenile Court judges, plaintiffs would then be in a position of showing "exceptional circumstances" which would warrant federal injunctive relief.[24] Alternatively, the plaintiffs always have the remedy of federal habeas corpus available in individual cases.[25]

A federal court can enjoin unconstitutional behavior by a state administrative official or law enforcement officer. Even in the absence of a pending state proceeding, however, a federal court cannot grant relief regarding unconstitutional practices which

occur at a state trial. The proper remedy is appeal and/or habeas corpus in individual cases. For better or for worse, the Supreme Court has decreed that constitutional violations in state trial settings must be first handled within the state system. That is the effective command of *O'Shea* and we must follow it.[26]

Judge Bailey Brown was correct in dismissing the complaint.

Affirmed.

MERRITT, Circuit Judge, concurring.

I agree with the result reached by the Court and with the conclusion that the abstention doctrine of *Younger v. Harris* is applicable. I disagree, however, that the doctrine of *Younger v. Harris* should be applied where the plaintiff does not seek to enjoin a pending state case. The existence of a pending state case is a crucial part of the *Younger* abstention doctrine. Here it seems to me that the relief sought would affect pending state cases. It would affect all those cases now pending before the defendant judges involving contempt proceedings against fathers who have allegedly failed to pay required alimony or child support.

tion seeking massive reforms in the state public defender's office); *Mudd v. Busse*, 437 F.Supp. 505 (N.D.Ind.1977), *aff'd without opinion*, 582 F.2d 1283 (7th Cir.), *cert. denied*, 439 U.S. 1078, 99 S.Ct. 858, 59 L.Ed.2d 47 (1978) (dismissing on *Younger* grounds an action seeking to reform state bail procedures). *But see Cicero v. Olgiati*, 426 F.Supp. 1213, 1219 (S.D.N.Y.1976) (declaratory judgment regarding state parole procedure not barred).

23. Tennessee has long held judgments imposing a fine or sentence for contempt to be appealable, at least so long as the contempt was not committed in the court's presence: *Robinson v. Air Draulics*, 214 Tenn. 30, 377 S.W.2d 908 (1964); *Leonard v. Leonard*, 207 Tenn. 609, 341 S.W.2d 740 (1960); *State ex rel. Wright v. Upchurch*, 194 Tenn. 657, 254 S.W.2d 748 (1953); *Hundlhausen v. U. S. Marine*, 52 Tenn. 702 (1891).

In addition to a right of direct appeal, Tennessee offers a litigant relief via what it terms a writ of certiorari. The writ is available whenever an inferior tribunal is "acting illegally" or exceeding its jurisdiction. T.C.A. § 27–801. *See also*, T.C.A. § 27–802. This writ appears to

be analogous to the writ of mandamus used in the federal system.

24. *See Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974) (entering declaratory relief on claim of right to appointed counsel in child dependency proceedings where state courts had repeatedly denied this claim).

25. Ordinarily, the doctrine of exhaustion of administrative or state remedies applies when federal habeas corpus relief is sought. 28 U.S.C. § 2254(d); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). However, there is no jurisdictional requirement that state remedies be exhausted, just strong considerations of comity. In the appropriate case, where a person is being illegally confined and the state courts are slow to act, immediate federal relief can be granted. *See United States ex rel. Sanders v. Arnold*, 535 F.2d 848, 851–55 (3d Cir. 1976) (Adams, J., dissenting).

26. We commend appellants' attorneys for their very good brief and oral argument.