**BRACH'S MEAT MARKET, INC., and Samuel Brach, Plaintiffs,**

v.

**Robert ABRAMS, As Attorney General of the State of New York, Ralph Laws, As Acting Commissioner of Agriculture and Markets of the State of New York, Schuelm Rubin and Malcolm Mintz, in their capacity as officials of the Department of Agriculture and Markets of the State of New York, Defendants.**

**No. 86 Civ. 8924 (JMW).**

United States District Court,
S.D. New York.

Aug. 27, 1987.

---

Noel W. Haas of Haas, Greenstein, Hauser, Sims, Cohen & Gerstein, P.C., New York City, for plaintiffs.

Marion R. Buchbinder of Office of the Atty. Gen., New York City, for defendants.

## MEMORANDUM AND ORDER

WALKER, District Judge:

### INTRODUCTION

Plaintiffs Samuel Brach ("Brach") and Brach's Meat Market, Inc. ("Brach's Meat Market"), a Queens County, New York butcher shop owned by Brach, have brought the instant action alleging that a New York state statute regulating kosher meat sales violates the the United States Constitution. Plaintiffs seek a declaratory judgment invalidating the statute, as well as damages and attorney's fees.

Defendants move to dismiss plaintiffs' action, arguing both that this Court should abstain from deciding plaintiffs' constitutional claims, and that plaintiffs' complaint fails to state a cause of action. Plaintiffs cross-move for a preliminary injunction preventing the enforcement of Section 201–a.

For the reasons set forth below, this Court must abstain from adjudicating the merits of plaintiffs' constitutional claims. Accordingly, defendants' motion to dismiss is granted.

### STATEMENT OF FACTS

The facts underlying the instant controversy are largely undisputed.[1] Section 201–a of the New York Agriculture and Markets Law applies to any person who "with intent to defraud sells or exposes for sale any .meat or meat preparations."[2]

---

1. In ruling on defendants' motion to dismiss, "all facts and inferences reasonably deducible therefrom are to be construed in favor of the plaintiff." *Budco, Inc. v. The Big Fights, Inc.*, 594 F.2d 900, 902 (2d Cir.1979) (per curiam).

2. The full text of Section 201–a reads as follows:

1. A person who, with intent to defraud, sells or exposes for sale any meat or meat preparations, article of food or food products, and falsely represents the same to be kosher or kosher for Passover, whether such meat or meat preparations, article of food or food

The principal thrust of the statute is to proscribe the mislabeling of non-kosher food as kosher. Of specific pertinence to this action, Section 201–a also prohibits any store from selling non-kosher food under the labels "Jewish" or "Hebrew," "unless the word 'non-kosher' is displayed in English letters, of at least the same size as the words 'Jewish' or 'Hebrew'...." Where both kosher and non-kosher food are sold on the premises, the store must "indicate on [its] window signs and all display advertising," in block letters at least four inches in height, "kosher and non-kosher meat sold here", or "kosher and non-kosher food sold here."

If a person violates any of the above regulations, he may be prosecuted for a misdemeanor, and may receive a maximum penalty of as much as one year in prison and a $1,000 fine per violation. 39 N.Y.Penal Law § 80.05 (McKinney Supp.1987). Where meat "has a retail value in excess of five thousand dollars," its fraudulent mislabeling may be prosecuted as a felony, with first offenders receiving as much as four years in prison. 39 N.Y.Penal Law § 70.-00(2)(e) (McKinney 1975). Section 201–a also authorizes civil penalties for the misbranding of meat, with first time offenders facing a civil fine of between $50 and $200 per violation. 2B N.Y. Agric. & Mkts. § 39

products, be raw or prepared for human consumption, or as having been prepared under, and of a product or products sanctioned by, the orthodox Hebrew religious requirements, either by direct statement orally, or in writing, which might reasonably be calculated to deceive or lead a reasonable man to believe that a representation is being made that such food is kosher or prepared in accordance with the orthodox Hebrew religious requirements, or falsely represents any food products or the contents of any package or container to be so constituted and prepared, by having or permitting to be inscribed thereon the word "kosher" or "kosher-style" in any language; or sells or exposes for sale non-kosher meat or meat preparation, or food or food product, which is labeled or advertised with the words "Jewish" or "Hebrew", either alone or in conjunction with the words "style" or "type" or any similar expression, unless the word "non-kosher" is displayed in English letters, of at least the same size as the words "Jewish" or "Hebrew", either alone or in conjunction with the words "style" or "type" or any similar expression; or sells or exposes for the sale in the same place of business both kosher or non-kosher meat or meat preparations, or both kosher and non-kosher food or food products, either raw or prepared for human consumption, and who fails to indicate on his window signs and all display advertising, in block letters at least four inches in height, "kosher and non-kosher meat sold here", or "kosher and non-kosher food sold here"; or who exposes for sale in any show window or place of business both kosher and non-kosher meat or meat preparations, or kosher and non-kosher food or food products, either raw or prepared for human consumption, and who fails to display over each kind of meat or meat preparation so exposed a sign in block letters at least four inches in height reading "kosher meat", or "non-kosher meat", as the case may be, or "kosher food" or "non-kosher

food", as the case may be, or who displays on his window, door, in his place of business, or in hand-bills or other printed matter distributed in or outside of his place of business, words or letters in Hebraic characters other than the word "kosher", or any sign, emblem, insignia, six-pointed star, symbol, or mark in simulation of same, without displaying in conjunction therewith in English letters of at least the same size as such characters, signs, emblems, insignia, symbols, or marks, the words "we sell kosher meat and food only", or "we sell non-kosher meat and food only", or "we sell both kosher and non-kosher meat and food", as the case may be, is guilty of a class A misdemeanor, except that a person who with intent to defraud sells or exposes for sale on premises any meat or meat preparations and falsely represents the same to be kosher or kosher for Passover, provided said meat or meat preparations in violation has a retail value in excess of five thousand dollars, whether such meat or meat preparations be raw or prepared for human consumption, is guilty of a class E felony. Possession of non-kosher meat and food, in any place of business advertising the sale of kosher meat and food only, is presumptive evidence that the person in possession exposes the same for sale with intent to defraud, in violation of the provisions of this section.

2. All fresh meats and poultry offered for sale at retail as kosher shall be marked on the label when packaged or by a sign when not packaged, with the words "soaked and salted" or "not soaked and salted" as the case may be. Such words when marked on the label or by a sign shall be in letters at least as large as the letters of the words on the label or sign designating such meat and poultry as kosher.

3. Fresh meat and poultry shall be defined as meat that has not been processed except for salting and soaking.
2B N.Y.Agric. & Mkts.Law § 201–a (McKinney Supp.1987).

(McKinney 1972).[3] The statute describes possession of non-kosher food in a "place of business advertising the sale of kosher meat and food only" as "presumptive evidence of an intent to defraud."

Plaintiff Brach's Meat Market is a well-established butcher shop in Queens County. Plaintiff Samuel Brach, the store's owner, is a member of the Jewish religion. In keeping with his religious principles, and those of his established customers, Brach only sells foods that he believes to be kosher.

During October 1984, Brach's Meat Market was visited by a New York State Department of Agriculture and Markets inspector, Malcolm Mintz, a defendant in the instant case. Mintz complained to Brach that eleven beef shins and eighteen pickled tongues labeled by Brach as kosher were actually not kosher, since the meat had not been "deveined," and thus contained some major blood vessels. Brach told Mintz that he did not believe that kosher meat must be deveined,[4] and that he did not intend to devein the meat before selling it as kosher.

Mintz reported his inspection of Brach's Meat Market to Schulem Rubin, an Orthodox Rabbi employed by the Department of Agriculture and Markets, who is also named by Brach as a defendant. Upon reviewing Mintz's report, Rubin concluded that Brach's refusal to devein the beef shins and tongues constituted a violation of Section 201–a. The state subsequently informed Brach that he had violated this law by failing to devein the meat, assessing a $5,800 fine against Brach's Meat Market. After Brach refused to pay the fine, on February 21, 1985, the state commenced an action in Queens County Civil Court against Brach seeking a civil penalty of $5,800.

As affirmative defenses in the state court action, Brach alleged: 1. That his prosecution under Section 201–a violated the establishment clause of the first amendment, since any "determination of the issues raised by the pleadings would require the court to pass over interpretation of rabbinical law in violation of the provisions of the United States Constitution," 2. That the term "kosher," as used in the statute, was unconstitutionally vague, violating the due process clause of the fourteenth amendment. Brach confined these constitutional claims to affirmative defenses and did not seek a declaratory judgment in the Queens County Civil Court declaring Section 201–a unconstitutional, since that court lacks authority to invalidate state statutes. The Queens action remains pending to the present day.

On March 6, 1986, employees of the Department of Agriculture and Markets again visited Brach's Meat Market. During this visit, a state inspector allegedly found that Brach had failed to properly devein fifteen "kosher" beef tongues. While the state inspectors were surveying the meat, Brach called Chaim Shulman, a Bayonne, New Jersey rabbi who previously had inspected kosher processing work at Brach's Meat Market. After arriving at Brach's, Shulman examined the suspect tongues and told the inspectors that, in his opinion as a rabbi, the tongues qualified as kosher meat. However, the state inspectors ordered the tongues placed in quarantine to prevent their sale. In an August 8, 1986 letter, the state informed Brach that his possession of the fifteen beef tongues violated Section 201–a, and fined Brach $12,400.00. Brach did not pay this sum, and the state has not filed a court action to collect the fine.

The Department of Agriculture and Markets subsequently inspected Brach's Meat Market on February 3, 1987. At that time,

---

**3.** The state must prove the same elements when bringing either a civil or criminal action under Section 201–a. However, in a civil action the state must only prove a defendant's violation of the statute by a preponderance of the evidence, while in a criminal prosecution the state must prove the defendant's guilt beyond a reasonable doubt.

**4.** Neither the state nor plaintiffs have cited any specific written Hebrew tenet which discusses the necessity of deveining kosher meat. Apparently, the question of whether kosher meat must be deveined remains an open issue in the Jewish religion.

the inspectors approved all of Brach's meat labeling.

On November 19, 1986, plaintiffs commenced the instant action, alleging that Section 201–a is unconstitutional, and seeking a declaratory judgment invalidating the statute.

## DISCUSSION

Defendants argue that this Court should abstain from reaching the merits of plaintiffs' case, since such a decision could improperly interfere with ongoing civil proceedings in the New York state courts. This Court finds that abstention is appropriate in the instant case, and accordingly grants defendants' motion to dismiss.

The abstention doctrine refers to a court-developed policy against "federal-court interference with pending state judicial processes...." *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The abstention doctrine arises out of three distinct policies. First, a proper respect for the principle of federalism and the competence of the state judiciary counsels against interference in pending state proceedings. *See, e.g., Id.; Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). ("[T]he National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."). Second, the abstention doctrine allows the federal courts to avoid unnecessary determinations on constitutional questions, since state court litigation may be resolved in favor of the party bringing the constitutional challenge on statutory or common law grounds. *Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987). Third, the abstention doctrine promotes economical use of judicial resources and efficient litigation by preventing federal and state courts from undertaking duplicative work on a single controversy. *Colorado*

*River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976).

■ The abstention doctrine first emerged as a rule proscribing federal court interference in ongoing state criminal prosecutions,[5] and today the federal courts remain without authority to enjoin such criminal cases. *See, e.g., Colorado River Water Conservation District v. United States,* 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 (1976); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, the abstention doctrine also may bar a federal court action that affects a pending civil action, such as the action commenced against plaintiffs in the Queens County Civil Court on February 21, 1985. *See, e.g., Pennzoil Co. v. Texaco, Inc.,* —— U.S. ——, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987); *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986). Abstention in favor of a state civil action is appropriate: 1. Where "noncriminal proceedings bear a close relationship to proceedings criminal in nature", 2. If noncriminal proceedings are "necessary for the vindication of important state policies or for the functioning of the state judicial system", or 3. "Where vital state interest are involved" and state courts provide a litigant with adequate means of raising a constitutional claim. *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

The pendency of the February 1985 civil action initiated against plaintiffs brings this action within the first category of civil cases where abstention is appropriate: "noncriminal proceedings [that] bear a close relationship to proceedings criminal in nature." For example, in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), the Supreme Court held that the filing of an Ohio state court nuisance action, which sought civil penalties for the exhibition of obscene movies,

---

**5.** *See, e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Douglas v. City*

*of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

barred a subsequent federal challenge to the nuisance statute invoked in state court. In holding that a federal district court should have abstained from considering a first amendment challenge to the statute, the Court noted "critical similarities between a criminal prosecution and Ohio nuisance proceedings...." *Id.* at 605, 95 S.Ct. at 1208. Such "critical similarities" included the fact that the State of Ohio, rather than a private party, had initiated the state court nuisance action, and that the nuisance statute was "both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials." *Id.* at 604, 95 S.Ct. at 1208. The Court thus held that the abstention doctrine barred plaintiff's federal court challenge.

The *Huffman* holding that federal courts must abstain from interference with state "noncriminal proceedings that bear a close relationship to proceedings criminal in nature" was reaffirmed in *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). In *Moore,* the Supreme Court held that a federal district court should have abstained from considering whether Texas state child-abuse proceedings violated the due process clause of the fourteenth amendment. The *Moore* Court based its abstention decision on the pendency of a state civil action filed by the Texas Department of Human Resources, and alleging child abuse. The Court's analysis relied on the similarities between the state civil action brought by the Texas Department of Human Resources and a state criminal action, which unquestionably would have required federal abstention. Specifically, the Court noted that the pending civil action was brought by the state, rather than a private litigant, and that the state's action seeking to remove allegedly battered children from parental custody was consistent with criminal statutes proscribing child abuse. *Id.* at 423, 99 S.Ct. at 2377.

■ The analysis employed in *Huffman* and *Moore* demonstrates that federal court abstention is mandated by the pendency of the Queens County Civil Court proceedings against plaintiffs. Like the state actions in

*Huffman* and *Moore,* the Queens action was commenced by the state acting in an enforcement role, rather than by a private litigant. Also, like the state actions in *Huffman* and *Moore,* the civil actions brought under Section 201–a are "in aid of and closely related to" criminal proscriptions. Section 201–a not only provides for civil penalties, but also authorizes criminal prosecutions punishable by as much as four years in prison. This Court thus concludes that the Queens action bears "a close relationship to proceedings criminal in nature," and that the federal courts must abstain from reviewing plaintiffs' constitutional challenge.

In opposing defendants' motion to dismiss, plaintiffs argue that they are severely limited in raising their constitutional claims in the state proceeding. They point out that the Queens County Civil Court is powerless to declare an act unconstitutional, and that thus they cannot immediately obtain a declaratory judgment invalidating Section 201–a if this Court exercises abstention. Plaintiffs do concede that, should the state prevail in the Queens County Civil Court, on appeal they can raise their claim that Section 201–a is unconstitutional and should be invalidated. However, plaintiffs argue that this ability to challenge the constitutionality of Section 201–a on appeal is inadequate, since any trial court judgment enforcing Section 201–a will already have violated plaintiffs' constitutional rights. Plaintiffs also asserted, at a May 21, 1987 oral argument before this Court, that they would have little actual ability to raise constitutional issues on an appeal in the New York state courts. As plaintiffs' counsel phrased this argument:

> [T]he right of appeal from a civil court proceeding [in New York] is extremely limited. I think your honor is probably aware of that. If you get a decision from the civil court, the only place you can go is to the appellate term.
>
> Now, when the appellate term rules one way or the other, you can't go any further in the absence of a leave to appeal granted either by the appellate term or the appellate division, otherwise you

are through and, of course, the issue is then *res judicata.*

The Supreme Court has held repeatedly that a litigant's inability to raise an issue in the first instance in a lower state judicial proceeding does not preclude federal court abstention. *See, e.g., Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Commission v. Garden State Bar Association,* 457 U.S. 423, 435–36, 102 S.Ct. 2515, 2522–23, 73 L.Ed.2d 116 (1982). The Supreme Court has viewed a party's ability to raise constitutional claims at a point during the state appellate process as sufficient to protect that party's rights. *Id.; Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977) ("Here it is abundantly clear that appellees had an *opportunity* to present their federal claims in the state proceedings. No more is required to invoke *Younger* abstention."); *Huffman v. Pursue, Ltd., supra,* 420 U.S. at 609–10, 95 S.Ct. at 1210– 11.

In the instant case, plaintiffs will have an adequate opportunity to raise their constitutional claims in state court. Plaintiffs are free to assert their constitutional claims as an affirmative defense in the state trial court, and have done so. Plaintiffs also have the absolute right, on appeal, to a review of their claim that Section 201–a is unconstitutional. Plaintiffs' inability to obtain a judgment in the Queens County Civil Court declaring Section 201–a unconstitutional thus does not alter the conclusion that abstention may not be precluded on the grounds that plaintiffs lack the ability to raise constitutional issues in the state litigation.

Plaintiffs also suggest that the New York state appellate courts will not give appropriate weight to their constitutional claims. Plaintiffs are correct that where the state brings an action "in bad faith to impose continuing harassment," the abstention doctrine does not bar federal intervention. *Dombrowski v. Pfister,* 380 U.S. 479, 490, 85 S.Ct. 1116, 1123, 14 L.Ed.2d 22 (1965). However, the plaintiff bears the burden of showing bad faith conduct in state court. *Pennzoil Co. v. Texaco, Inc.,* — U.S. ——, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987).

Plaintiffs provide no support for their conclusory allegation that the state appellate judiciary will ignore their constitutional claims. "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Commission v. Garden State Bar Association,* 457 U.S. 423, 430, 102 S.Ct. 2515, 2520, 73 L.Ed.2d 116 (1982) (emphasis in original). Prior federal court decisions to abstain in light of pending New York state proceedings undercut plaintiffs' contentions that the state appellate courts will prove unresponsive to the constitutional claims raised in the instant case. *See, e.g., Wilson v. De Bruyn,* 633 F.Supp. 1222, 1226 (W.D.N.Y.1986); *Northeast Mines, Inc. v. Town of Smithtown,* 584 F.Supp. 112, 114 (E.D.N.Y. 1984).[6] "We cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." *Pennzoil Co. v. Texaco, Inc.,* — U.S. ——, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987).

## CONCLUSION

For the reasons set forth above, this Court will abstain from adjudicating the merits of plaintiffs' constitutional claims. Plaintiffs' motion for a preliminary injunction is denied. Defendants' motion to dismiss is granted.

SO ORDERED.

6. *See also Juidice v. Vail,* 430 U.S. 327, 337 & n. 12, 97 S.Ct. 1211, 1218 & n. 12, 51 L.Ed.2d 376     (1977).