John MILLER, Kings Heights Associates, Linda Bloom, Michael Laub, Gunilla Knutson, Mann Realty Associates, 22–24 Elliot Associates Ltd., and Carol Management Corporation, on behalf of themselves and a class consisting of all others similarly situated, and the Rent Stabilization Association of N.Y.C., Inc., Plaintiffs,

v.

Jacqueline SILBERMANN, individually and as Administrative Judge of The New York City Civil Court, Israel Rubin, individually and as former Administrative Judge of the New York City Civil Court, Albert Rosenblatt, individually and as Chief Administrator of the Courts, Milton L. Williams, Administrative Judge for the New York City Courts, Jack Baer, individually and as Chief Clerk of the New York City Civil Court, Sol Wachtler, individually and as former Chief Judge of the Unified Court System, Richard D. Simons, individually and as Acting Chief Judge of the Unified Court System, various Judges of the New York City Civil Court, and various administrative officers denominated as "Judges" of the Housing Part of Civil Court, Defendants.

No. 89 Civ. 3573 (SWK).

United States District Court,
S.D. New York.

Jan. 22, 1997.

Law Offices of Michael G. Berger, New York City by Michael G. Berger, Susan Standish, for Plaintiffs.

Michael Colodner, New York City by John Eiseman, John J. Sullivan, for Defendants.

Legal Services of New York City, New York City by Andrew Scherer, David Robinson, Brooklyn Legal Services, Corp. B, Brooklyn, NY by John C. Gray, Jr., Ronald Languedoc, Alicia Glen, MFY Legal Services, Inc., New York City by Steven Myers, Susan M. Cohen, Northern Manhattan Improvement Corp., New York City by Kenneth Rosenfeld, for Intervenor–Defendant City–Wide Task Force On Housing Court.

The Legal Aid Society, New York City by Helaine Barnett, Scott A. Rosenberg, Judith Goldiner, Collin Bull, April Newbauer, Marlen Bodden, Lisa Landau, Joan Magones, David W. Weschler, New York City by David W. Weschler, Catharine A. Grad, for Intervenor–Defendant 588 Park Place Tenants Ass'n.

Finder, Novick, Kerrigan & Anderson, New York City by Andrea Novick for Intervenor–Defendant Metropolitan Council On Housing Court.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this civil rights action brought under 42 U.S.C. § 1983, defendants move, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings dismissing the amended complaint. For the reasons set forth below, defendants' motion is granted.

### BACKGROUND [1]

The New York State legislature established the Civil Court of the City of New York and its Housing Part (the "Housing Court") in 1972 to enforce municipal codes pertaining to housing issues. *See* N.Y.Civ. Ct. Act § 110(a) (McKinney 1983). The Housing Court has jurisdiction over "actions and proceedings involving the enforcement of state and local laws for the establishment and maintenance of housing standards, including, but not limited to, the multiple dwelling law and the housing maintenance code, building code and health code of the administrative code of the city of New York...." *Id.* The legislature has empowered the Housing Court to enforce its housing laws by, inter alia, issuing injunctions, *id.*, removing tenants from residential premises, *id.*, and granting rent abatements for breaches of the warranty of habitability, *see* N.Y. Real Prop. Law ("NYRPL") § 235–b (McKinney 1989).

The Housing Court is part of New York City's Civil Court, which has branches in each of the city's five boroughs. The administrative judge of the Civil Court oversees the Housing Court on behalf of the Civil Court's chief administrative judge. The Housing Court is further administered by several supervising judges, county clerks and deputy county clerks. The judicial aspect of the Housing Court consists of a body of

---

**1.** The facts of this case are set forth in detail in *Miller v. Silbermann*, 832 F.Supp. 663 (S.D.N.Y. 1993), familiarity with which is presumed.

judges who adjudicate the majority of cases brought before the courts.

On May 22, 1989, plaintiffs, consisting of an association of residential apartment building owners in New York City and nine individual landlords representing a class of landlords, commenced the present action under 42 U.S.C. § 1983. Plaintiffs charge defendant administrators, judges and clerical personnel of the Housing Court with systematically depriving landlords of their constitutional and state law rights by unfairly favoring tenants in landlord-tenant disputes. Specifically, plaintiffs allege that defendants have: (1) publicly pronounced anti-landlord policies; (2) assisted tenants in filing frivolous claims; (3) issued illegal rulings against landlords; (4) engaged in "case shopping," whereby judges seek to resolve disputes involving landlords against whom they have formed a specific bias; (5) awarded rent abatements or refused to evict tenants based on non-existent building violations; (6) unlawfully forbidden landlords' attorneys from recovering fees and costs; (7) permitted the distribution of pro-tenant literature in Housing Court buildings while simultaneously denying the same right to landlords; and (8) unlawfully delayed issuances of warrants of eviction and rent deposit orders against tenants. *See* Amended Complaint ¶¶ 8–20.

On September 12, 1991, the parties entered into a Stipulation of Settlement (the "Stipulation") pursuant to which defendants agreed to change certain Housing Court policies in response to plaintiffs' concerns. At the same time, Judge Jacqueline Silbermann, the New York City Civil Court's administrative judge, issued a Statement of Intention setting forth several specific policies that would be changed in the Housing Court's operations. The Stipulation also provided that this Court would place this case on the suspense calendar but would reinstate the action if the steps outlined in the Statement of Intention were not taken.

On December 4, 1992, after plaintiffs charged defendants with failing to honor the Stipulation and the Statement of Intention, the Court restored the case to the active docket. The amended complaint filed in conjunction with the restoration of the present action sets forth the following seven claims for relief: (1) systematic bias by the Housing Court against landlords' in violation of the Due Process Clause of the Fourteenth Amendment (First Claim for Relief); (2) violation of the landlords' freedom to enter into contracts by the Housing Court's refusal to enforce provisions requiring tenants to pay attorneys' fees (Second Claim for Relief); (3) prohibiting the establishment of landlord information areas in the Housing Court in violation of the First Amendment and the Due Process Clause of the Fourteenth Amendment (Third Claim for Relief); (4) unequal treatment of landlords and tenants in violation of the Equal Protection Clause of the Fourteenth Amendment (Fourth Claim for Relief); (5) systematic delay in issuing warrants against tenants in violation of NYRPL § 732 (Fifth Claim for Relief); (6) systematic refusal to require tenants to deposit rent or state why the deposit is not required in violation of NYRPL § 745 (Sixth Claim for Relief); and (7) systematic refusal to award costs to landlords in summary proceedings in violation of NYRPL § 747 (Seventh Claim for Relief).

Plaintiffs seek several forms of relief, including, inter alia: An order certifying that this action may proceed as a class action, pursuant to Federal Rule of Civil Procedure 23; an order appointing a special master or administrator to report to the Court on the issues presented in this case and to assist the Court in enforcing and monitoring defendants' compliance with any orders issued to remedy the current injustices; and a permanent injunction requiring the Housing Court to conform its actions to federal and state law.

In 1993, three tenant organizations, the Metropolitan Council on Housing, the City–Wide Task Force on Housing Court and the 588 Park Place Tenants Association (collectively, the "Intervenor Defendants"), moved to intervene as defendants in this litigation pursuant to Federal Rule of Civil Procedure 24. In *Miller v. Silbermann,* 832 F.Supp. at 673–74, the Court granted the Intervenor Defendants' motion for permissive intervention in light of their interest in the litigation

and the likelihood that their presence would contribute to the Court's ability to resolve all of the issues raised in the instant case.

■ Presently before the Court is defendants' motion, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(c), to dismiss the amended complaint or for judgment on the pleadings.[2] Specifically, defendants argue that (1) plaintiffs lack standing; (2) principles of comity and federalism, as well as the *Younger* and *Burford* abstention doctrines, render the lawsuit an improper subject for consideration by a federal court; (3) the First, Fifth, Sixth and Seventh Claims for Relief are barred by the Eleventh Amendment; and (4) the amended complaint fails to state a claim upon which relief may be granted. Because plaintiffs allege injury that is only speculative in nature, the Court finds that plaintiffs lack standing to bring the present action. In addition, because the relief sought by plaintiffs would require this Court's continuous supervision of and interference in Housing Court proceedings, this action is barred by the principles of comity and federalism.[3]

## DISCUSSION

### I. Standing

Defendants argue that the individual landlord plaintiffs lack standing because they have failed to allege any actual or threatened injury as a result of defendants' conduct. In addition, defendants assert that plaintiff Rent Stabilization Association of New York City ("RSA") lacks organizational standing under the three-prong test established by the Supreme Court in *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ In order for a federal court to assert jurisdiction over an action, the court must find that a justiciable "case or controversy" exists. *See* U.S. Const. art. III, § 2.

The preeminent doctrine for determining whether a case or controversy exists is the principle of standing, which defines a litigant's ability to invoke the power of the federal court. *Comer v. Cisneros,* 37 F.3d 775, 787 (2d Cir.1994). The burden to establish standing rests on the party asserting its existence. *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995).

■ The Supreme Court has formulated the following three-prong test to determine whether a plaintiff has standing to bring a claim: (1) the plaintiff has suffered a personal injury or has demonstrated a threat of injury, i.e. an "injury in fact"; (2) the injury is traceable to the challenged action; and (3) the injury is likely to be redressed by the relief sought. *Northeastern Fla. Chapter of the Associated Gen. Contractors v. Jacksonville,* 508 U.S. 656, 663–64, 113 S.Ct. 2297, 2301–02, 124 L.Ed.2d 586 (1983); *Comer v. Cisneros,* 37 F.3d at 787. The injury must therefore be "sufficiently real and immediate" as opposed to merely "conjectural" or "hypothetical." *Alliance of Am. Insurers v. Cuomo,* 854 F.2d 591, 595–96 (2d Cir.1988) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 494–96, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974)). The standing requirement is designed to insure that the plaintiff has " 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Bordell v. General Elec. Co.,* 922 F.2d 1057, 1060 (2d Cir.1991) (quoting *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)) (emphasis in original). A litigant cannot "assert speculative, conjectural or generalized grievances more appropriately resolved by a governmental body, other than the courts." *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1347 (2d Cir.1989), *cert. denied,* 495

---

**2.** The original defendants move to dismiss the amended complaint under Rule 12(b) and the Intervenor Defendants move for judgment on the pleadings under Rule 12(c). The differing grounds for the present motion are irrelevant to the Court's determination as the same legal standard applies under Rules 12(b) and (c). *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine*

*Hill Concrete Mix Corp.,* 554 F.2d 551, 553 n. 2 (2d Cir.1977).

**3.** Because the Court finds that dismissal is warranted on these grounds, it does not address defendants' other grounds for dismissal.

U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

Because these guidelines are general in nature and cannot be applied mechanically, a court should "compar[e] the allegations of the particular complaint to those made in prior standing cases" to determine whether standing exists in the case at hand. *Allen v. Wright,* 468 U.S. 737, 751–52, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). Moreover, the fact that plaintiffs purport to represent a broader class "adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong....'" *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 1925 n. 20, 48 L.Ed.2d 450 (1976) (quoting *Warth v. Seldin,* 422 U.S. at 502, 95 S.Ct. at 2207); *see also Doe v. Blum,* 729 F.2d 186, 190 n. 4 (2d Cir.1984) (satisfaction of standing's injury requirement must be determined with respect to named plaintiffs); *Grimes v. Cavazos,* 786 F.Supp. 1184, 1186–87 (S.D.N.Y.1992) (same).

In evaluating whether the amended complaint comports with the requirements of standing, the Court is guided by several Supreme Court cases that addressed claims of systematic misconduct by local officials. In *O'Shea v. Littleton,* 414 U.S. 488, 490–91, 94 S.Ct. 669, 673–74, 38 L.Ed.2d 674 (1974), a class of plaintiffs brought suit charging local magistrates and judges with enforcing criminal laws in a discriminatory manner against the class. Nonetheless, the complaint failed to allege any specific instances of wrongdoing involving any of the named judicial officer respondents on behalf of any of the plaintiffs. *Id.* at 492, 94 S.Ct. at 674. The Supreme Court ruled that the plaintiffs did not have standing because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* at 495–96, 94 S.Ct. at 676. As for the possibility of future injury, the Court found that there was not a "sufficiently real and immediate" danger of continuing to encounter unfair treatment "sim-

ply because [plaintiffs] anticipate violating lawful criminal statutes and being tried for their offenses...." *Id.* at 496, 94 S.Ct. at 676.

Similarly, in *Rizzo v. Goode,* 423 U.S. 362, 366–67, 96 S.Ct. 598, 602, 46 L.Ed.2d 561 (1976), a plaintiff class of Philadelphia residents charged the city and its police officers with engaging in a campaign of illegal and unconstitutional conduct directed at minority citizens and city residents in general. The Supreme Court again found that the plaintiffs did not have standing because they "lacked the requisite 'personal stake in the outcome'" necessary to pursue their claims. *Id.* at 372–73, 96 S.Ct. at 605 (quoting *Baker v. Carr,* 369 U.S. at 204, 82 S.Ct. at 703). The Court reasoned:

[T]he individual respondents' claim to "real and immediate" injury rests ... upon what one of a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception of departmental disciplinary procedures. This hypothesis is even more attenuated than those allegations of future injury found insufficient in *O'Shea* to warrant invocation of federal jurisdiction.

*Id.* at 372, 96 S.Ct. at 605.

The Supreme Court reiterated its holdings in *O'Shea* and *Rizzo* in *City of Los Angeles v. Lyons,* 461 U.S. 95, 97–98, 103 S.Ct. 1660, 1662–63, 75 L.Ed.2d 675 (1983), in which an individual sued the city and four of its police officers for using illegal "choke holds" in effectuating arrests. In *Lyons,* the Court concluded that there was no justiciable case or controversy because there was no "real and immediate threat that [the plaintiff] would again be stopped ... by an officer or officers who would illegally choke him into unconsciousness." *Id.* at 105, 103 S.Ct. at 1667. The Court noted that, in order to meet the standing requirement, the plaintiff would have to allege that he would again be stopped by a police officer and that all police officers always use illegal choke holds or the city authorizes them to use such tactics. *Id.* at 105–06, 103 S.Ct. at 1666–67.

■ Plaintiffs in the case at bar face difficulties similar to the plaintiffs in *O'Shea*, *Rizzo* and *Lyons*. While the amended complaint refers to overall patterns of illegal and unconstitutional conduct on the part of most of the judges, clerks and administrators of the Housing Court, it does not connect specific allegations to specific plaintiffs so as to demonstrate a sufficiently real and immediate threat of future injury. Thus, for example, the amended complaint avers that defendants routinely issue meritless orders, coerce and intimidate owners and award illegal rent-abatements to tenants. Yet nowhere does the amended complaint assert how any individual plaintiff has been personally injured. As for the prospect of future injury, the Court finds such a possibility too attenuated to justify a finding of standing under Supreme Court jurisprudence. In order to support a finding of standing under this theory, the Court would have to hypothesize that the rental property owner plaintiffs will find themselves in some as yet undetermined landlord-tenant dispute, and subsequently will appear before a certain unnamed judge in Housing Court who will misapply state law in adjudicating the claim. Although this case is factually distinguishable from *O'Shea*, *Rizzo* and *Lyons* in that the threat of injury in those cases depended upon a member of the plaintiff class engaging in some kind of unlawful conduct in the future, this Court nonetheless finds that plaintiffs' allegations of injury require the kind of speculation the Court declined to exercise in *O'Shea*.[4] Accordingly, plaintiffs do not meet the requirement of establishing that defendants' conduct is likely to cause direct harm in the future.

■ Plaintiff RSA lacks standing for the additional reason that it does not meet the test set forth by the Supreme Court for organizational standing. In order for an organization to have standing to pursue a claim on behalf of its members, the following three conditions must be met: (1) the members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the litigation. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. at 343, 97 S.Ct. at 2441. Even if RSA could meet the first two requirements, the Court finds that participation of individual members of the organization would be essential to resolution of the dispute. Contrary to plaintiffs' suggestion, the Court could not remedy the alleged wrongs perpetrated by defendants without reference to specific injured landlords and the particular facts of each case. *See Rent Stabilization Ass'n v. Dinkins*, 5 F,3d 591, 596–97 (2d Cir.1993).

## II. Federalism and Comity

■ As the Supreme Court recognized in *O'Shea*, allegations that assert future injury based on speculation about future conduct by defendants not only bear on issues of standing, but also implicate principles of federalism and comity. *O'Shea v. Littleton*, 414 U.S. at 500, 94 S.Ct. at 678. The doctrine of "comity abstention" has two facets. *Cicero v. Olgiati*, 426 F.Supp. 1213, 1218 (S.D.N.Y. 1976). Under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, federal court abstention is justified where pending state court proceedings may afford an immediate opportunity for resolution of plaintiff's federal claims. Additionally, as the Supreme Court recognized in *O'Shea* and *Rizzo*, comity abstention may be warranted even where no state proceedings are pending. In this latter line of cases, the Court focused not on the substantive issue per se, but rather on the nature of the relief sought. Under the law and policy set forth

---

4. Plaintiffs' submission of an affidavit indicating that 2,458 complaints have been filed by various property owners against Housing Court personnel does not remedy this inadequacy. As an initial matter, it is well-settled that on a motion to dismiss, a court may only consider facts alleged on the face of the complaint and documents attached as exhibits or specifically incorporated by reference. *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989). Here, these complaints, were neither attached to the amended complaint nor incorporated by reference. In any event, the list of complaints does not persuade this Court that the defendants in this action, who are not necessarily the subject of these complaints, pose an immediate threat of injury to the plaintiff class.

in these cases, where the equitable relief sought would inappropriately require the federal court to supervise institutions central to the state's sovereignty, it should not be entertained. *O'Shea v. Littleton,* 414 U.S. at 500–02, 94 S.Ct. at 678–79; *Rizzo v. Goode,* 423 U.S. at 377–80, 96 S.Ct. at 607–09.

■ Here, plaintiffs neither challenge the validity of a statute nor ask the Court to enjoin specific housing court proceedings that might be brought pursuant to existing statutes. Rather, like the plaintiffs in *O'Shea,* plaintiffs here seek an injunction aimed at "controlling or preventing the occurrence of specific events that might take place" in the course of future trials. *Id.* at 500, 94 S.Ct. at 678. Specifically, plaintiffs seek an order (1) issuing a permanent injunction requiring the Housing Court to conform its actions to what plaintiffs perceive to be the proper application of state and federal law; and (2) appointing a special master to report to the Court on the issues presented in this case and to assist the Court in enforcing and monitoring defendants' compliance with such an order. Such relief, which would undoubtedly necessitate the interruption of Housing Court proceedings by this Court in order to evaluate any allegations of non-compliance by defendants vis-á-vis any member of plaintiffs' broadly defined class, constitutes "nothing less than an ongoing federal audit of state ... proceedings which would indirectly accomplish the kind of interference that *Younger v. Harris* ... and related cases sought to prevent." *Id.*

Other federal courts have likewise abstained where the relief sought would require equitable intervention that is both "intrusive and unworkable." *Id.* For example, in *Wallace v. Kern,* 520 F.2d 400, 405–06 (2d Cir. 1975), *cert. denied,* 424 U.S. 912, 96 S.Ct. 1109, 47 L.Ed.2d 316 (1976), the Second Circuit invalidated a district court's injunction providing for new bail hearing procedures, given that such relief would require precisely the sort of federal court surveillance forbidden by *O'Shea* and *Younger.* Similarly, in *Parker v. Turner,* 626 F.2d 1 (6th Cir.1980),

the court was faced with the question of whether it should apply the *Younger* principles of comity and federalism to bar relief solely because of the likelihood of substantial interference in state proceedings. Relying on the Supreme Court's decisions in *O'Shea* and *Rizzo,* the court held that the exercise of equitable restraint was not only appropriate, but necessary. Specifically, the court found that the relief sought—an injunction requiring the juvenile court to adhere to due process requirements—required the type of daily monitoring of state trials rejected in *O'Shea.* Moreover, in discussing its invocation of the abstention doctrine, the *Parker* court observed that when the state agency involved in the dispute is a state court, as is the case here, the equitable restraint considerations "appear to be nearly absolute." *Parker v. Turner,* 626 F.2d at 7. In so finding, the court noted that in *O'Shea,* the Supreme Court extended the "near-absolute restraint rule" set forth in *Younger* "to situations where the relief sought would interfere with the day-to-day conduct of state trials." *Id.* at 8.

When faced with analogous scenarios, other courts have also concluded that abstention is justified. *See Bedrosian v. Mintz,* 518 F.2d 396 (2d Cir.1975) (principles of equitable restraint preclude federal court from granting declaratory relief or issuing injunction regarding the appointment of counsel by the state judiciary); *Munson v. Gilliam,* 543 F.2d 48, 54–55 (8th Cir.1976) (refusing to issue injunction with "ongoing audit ramifications" since requested relief would severely intrude on the internal operation of the state criminal justice system); *Gardner v. Luckey,* 500 F.2d 712, 715 (5th Cir.1974) (refusing to issue order that contemplated interruption of state proceedings to adjudicate plaintiffs' allegations of non-compliance), *cert. denied,* 423 U.S. 841, 96 S.Ct. 73, 46 L.Ed.2d 61 (1975); *Cafano v. Cimmino,* 501 F.Supp. 397, 400 (D.Conn.) (applying principles of equity and federalism, court declines to issue order controlling state's criminal prosecution of plaintiff), *aff'd,* 636 F.2d 1200 (2d Cir.1980).[5]

---

5. Plaintiffs' reliance on *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) is misplaced. In *Gibson,* plaintiffs' allegation of adjudicatory bias was based on the decisionmakers' purported pecuniary interest in the outcome of the disputes. In contrast, plaintiffs' allega-

In addition, because the injunction plaintiffs seek is directed at possible future acts by defendants, it imposes a continuing obligation of compliance. Presumably, any member of the plaintiff class or any beneficiary of the injunction could allege and have adjudicated any contention that the terms of the injunctive order have been violated. Moreover, this determination would be subject to review by the Court of Appeals, and possibly the Supreme Court. In *O'Shea*, the Supreme Court expressed concern over this type of heavy-handed intrusion into state judicial processes:

> Apart from the inherent difficulties in defining the proper standards against which such claims might be measured, and the significant problems of proving non-compliance in individual cases, such a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state ... proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized....

*Id.* at 502, 94 S.Ct. at 679.

█ Also relevant to this Court's determination is the fact that like the plaintiffs in both *O'Shea* and *Turner*, plaintiffs here have other adequate means of redress in the state courts. This is true even accepting plaintiffs' contention that the Housing Court is so biased that plaintiffs would never prevail on such a claim. Plaintiffs' allegations of abuse of judicial discretion are addressable by the state appellate process. Similarly, Article 78 of New York's Civil Practice Law and Rules provides a process by which administrative actions of court administrators may be challenged.[6] N.Y. C.P.L.R. 7801 *et seq.* (McKinney 1994). Thus, even if plaintiffs are unable to successfully assert such claims in the first instance in Housing Court,

the aforementioned alternatives are nonetheless available to them. As one district court held in *Brach's Meat Market, Inc. v. Abrams*, 668 F.Supp. 275, 281 (S.D.N.Y. 1987), "a litigant's inability to raise an issue in the first instance in a lower state judicial proceeding does not preclude federal court abstention." Rather, a party's ability to raise constitutional claims at some point during the state appellate process sufficiently protects that party's rights.[7]

█ Finally, the Court finds not only that the requested relief is intrusive and unmanageable, but also that the area in which plaintiffs ask this Court to intervene is one central to state sovereignty. As an initial matter, state court proceedings need not be criminal in order to be of significant importance to the state. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Rather, "[p]roceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation." *Id.* It is clear that plaintiffs' claims in the present case go to the very core of the functioning of the Housing Court branch of the Civil Court of the City of New York. Thus this case falls squarely within the reasoning of *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 13–14, 107 S.Ct. 1519, 1527–28, 95 L.Ed.2d 1 (1987), in which the Supreme Court "recognized that the States have important interests in administering certain aspects of their judicial systems."

█ Plaintiffs' reliance on *McNeill v. New York City Housing Authority*, 719 F.Supp. 233 (S.D.N.Y.1989) is misplaced. In *McNeill*, the court found the invocation of *Younger* abstention to be inappropriate, holding that the state had only a limited interest in the proceedings at issue. That case, how-

---

tions of bias here stem not from extra-judicial and facially unacceptable factors like those in *Gibson*, but rather from the substance of judicial determinations.

6. As defendants point out, this approach was utilized in *Brusco v. Braun*, 84 N.Y.2d 674, 621 N.Y.S.2d 291, 645 N.E.2d 724 (1994) to successfully challenge one of the actions asserted in the present case—the holding of inquests before entry of judgment in non-payment summary proceedings. *See* Amended Complaint ¶¶ 88–92.

7. In light of this determination—that adequate remedies at law exist for plaintiffs' claims—the Court also concludes that plaintiffs have not stated a claim for equitable relief. *O'Shea v. Littleton*, 414 U.S. at 499, 94 S.Ct. at 677–78 (the imposition of an equitable remedy is appropriate only where the moving party will suffer irreparable harm and no adequate remedies at law exist).

494

ever, is factually distinguishable from the case at bar. In *McNeill*, plaintiffs challenged particular termination and eviction procedures pursuant to a housing assistance program known as "Section 8," which was administrated by the Housing Authority. The injunctive relief sought by the *McNeill* plaintiffs was not directed at future substantive or discretionary decisions of the Housing Authority, but rather at specific termination procedures utilized by the Housing Authority before evicting tenants pursuant to Section 8. The *McNeill* court's conclusion that the state's interest in the specific eviction procedures was limited has little persuasive value in the instant case. As discussed above, plaintiffs here do not challenge the validity of select statutes or procedures. Rather, their claims are based on virtually every aspect of the Housing Court's operation, particularly its interpretation and application of New York state housing law. Significantly, the interpretation of state housing law is a necessary precursor to the determination of whether such law has been applied unfairly with respect to the plaintiff class. Accordingly, this Court finds that the state's interest in the administration and application of New York housing law by Housing Court personnel is important and thus within the scope of cases in which abstention is warranted. Therefore, it is the judgment of this Court that considerations of equity, comity and federalism compel the conclusion that this case does not present proper grounds for the granting of equitable relief.[8]

## CONCLUSION

For the reasons stated above, defendants' motion for judgment on the pleadings is granted and the amended complaint is dismissed.

SO ORDERED.

---

8. A contrary result is not warranted simply because plaintiffs assert their claims pursuant to Section 1983. Although Section 1983 authorizes a federal court to issue injunctions aimed at state court proceedings, the Supreme Court has emphasized that Section 1983 does not "question or qualify in any way the principles of equity, comity, and federalism that must restrain a federal court when asked to enjoin a state court proceeding." *O'Shea v. Littleton,* 414 U.S. at 499, 94 S.Ct. at 678 (quoting *Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972)).